IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA; and THE STATE OF NEW YORK<br><br>*ex rel.* DR. ANTONI NARGOL & DR. DAVID LANGTON,<br><br>Relators,<br><br>v.<br><br>DEPUY ORTHOPAEDICS, INC., DEPUY, INC., and JOHNSON & JOHNSON SERVICES, INC.,<br><br>Defendants. | Case No. 12-cv-10896-MPK |

## MEMORANDUM OF LAW IN SUPPORT OF DEPUY'S MOTION FOR ATTORNEYS' FEES AND EXPENSES

Mark D. Seltzer, Esq.
(BBO No. 556341)
Hannah R. Bornstein, Esq.
(BBO No. 670433)
Colin T. Missett, Esq.
(BBO No. 706248)
NIXON PEABODY LLP
53 State Street
Boston, MA  02109-2835
Telephone: (617) 345-1000

Adam R. Tarosky, Esq.
(admitted *pro hac vice*)
NIXON PEABODY LLP
799 9th Street NW, Suite 500
Washington, DC  20001-5327
Telephone: (202) 585-8000

*Attorneys for Defendants DePuy Orthopaedics, Inc., DePuy, Inc., Johnson & Johnson Services, Inc.*

December 21, 2021

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

**PRELIMINARY STATEMENT** ................................................................................... 1

**BACKGROUND** ........................................................................................................ 3

      A.     Relators' May 4, 2015 Affidavits ........................................................ 3

      B.     The First Circuit's Remand and Pre-December 20, 2019 Discovery ................ 4

      C.     Relators' Discovery Obstruction .......................................................... 5

      D.     The M&O .......................................................................................... 8

**ARGUMENT** .......................................................................................................... 11

**I.**    **Relators' Claims Were Objectively Frivolous and Their Misconduct Willful** ......... 11

**II.**   **Ross B. Brooks, Esq. Unreasonably Multiplied These Proceedings** ........................ 15

**III.**  **Relators' and Mr. Brooks' Discovery Conduct Mandates an Award of Fees and Expenses** ........................................................................................................... 18

**CONCLUSION** ........................................................................................................ 20

## TABLE OF AUTHORITIES

### CASES

**Page(s)**

*AngioDynamics, Inc. v. Biolitec AG*,
  780 F.3d 420 (1st Cir. 2015) ................................................................................. 12, 13

*United States ex rel. Bierman v. Orthofix Int'l, N.V.*,
  113 F. Supp. 3d 414 (D. Mass. 2015) ..................................................................... 11, 12

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ................................................................................................. 11, 13

*Conning v. Halpern*,
  18-cv-12336, 2021 WL 24573 (D. Mass. Jan. 4, 2021) .......................................... 18, 20

*Cruz v. Savage*,
  896 F.2d 626 (1st Cir. 1990) ....................................................................................... 15

*Escribano-Reyes v. Prof'l Hepa Certificate Corp.*,
  817 F.3d 380 (1st Cir. 2016) ....................................................................................... 16

*Goodyear Tire & Rubber Co. v. Haeger*,
  137 S. Ct. 1178 (2017) ................................................................................................... 3

*Hinds v. Dean*,
  15-cv-10073-LTS, 2017 WL 1439661 (D. Mass. Apr. 21, 2017) ................................. 19

*Ins. Recovery Group, Inc. v. Connolly*,
  977 F. Supp. 2d 16 (D. Mass. 2013) ........................................................................... 11

*Jensen v. Phillips Screw Co.*,
  546 F.3d 59 (1st Cir. 2008) .................................................................................... 15, 17

*Lamboy-Ortiz v. Ortiz-Velez*,
  630 F.3d 228 (1st Cir. 2010) .................................................................................. 15–16

*Malot v. Dorado Beach Cottages Assocs.*,
  478 F.3d 40 (1st Cir. 2007) .................................................................................... 13–14

*MJS Las Croabas Properties, Inc.*,
  545 B.R. 401 (B.A.P. 1st Cir. 2016) ........................................................................... 18

*United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*,
  865 F.3d 29 (1st Cir. 2017) ................................................................................. 4, 12–13

**CASES**

*(cont.)*

**Page(s)**

*R.W. Int'l. Corp. v. Welch Foods, Inc.*,
  937 F.2d 11 (1st Cir. 1991)...........................................................................................19

*Rossello-Gonzalez v. Acevedo-Vila*,
  483 F.3d 1 (1st Cir. 2007)............................................................................................15

*Sanchez-Rodriguez v. AT & T Mobility Puerto Rico, Inc.*,
  673 F.3d 1 (1st Cir. 2012)............................................................................................16

*United States ex rel. Ven-A-Care of the Fla. Keys, Inc. v. Baxter Healthcare Corp.*,
  772 F.3d 932 (1st Cir. 2014).........................................................................................14

**STATUTES AND RULES**

28 U.S.C. § 1927................................................................................................. *passim*

31 U.S.C. § 3730(d)(4) ....................................................................................1, 11, 20

FED. R. CIV. P. 37 .............................................................................................. *passim*

FED. R. CIV. P. 54........................................................................................1, 3, 11, 20

Defendants (collectively, **DePuy**) respectfully submit this memorandum in support of their motion for attorneys' fees and expenses from: (i) Relators Dr. Antoni Nargol and Dr. David Langton (collectively, **Relators)** pursuant to 31 U.S.C. § 3730(d)(4), Federal Rules of Civil Procedure 37(a)(5)(A), 37(b)(2), and 54(d)(2), and this Court's inherent powers; and (ii) their counsel, Ross B. Brooks, Esq., and his law firm, The Brooks Law Firm, pursuant to 28 U.S.C. § 1927, and Federal Rules of Civil Procedure 37(a)(5)(A), 37(b)(2), and 54(d)(2). The motion should be granted, and DePuy should be awarded fees and expenses in amounts to be determined in subsequent proceedings.

## PRELIMINARY STATEMENT

DePuy brings this motion pursuant to authorities that allow—and, in one instance, *require*—this Court to award DePuy its reasonable attorneys' fees and expenses resulting from Relators' years-long pursuit of frivolous claims, and their counsel's conduct, which enabled Relators' actions and further multiplied these proceedings. In particular, the False Claims Act (**FCA**) allows a prevailing defendant to recover its fees and expenses from a relator whose claim was "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment," 31 U.S.C. § 3730(d)(4). A separate section of the United States Code provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Court may also order a fee recovery in this action pursuant to either Federal Rule of Civil Procedure 37, which mandates attorneys' fees for certain discovery misconduct, or pursuant to the Court's inherent powers.

Here, the Court need look no further than to its November 10, 2021 Memorandum and Order on DePuy's Motion for Reconsideration (##605 (sealed); 631 (unsealed), the **M&O**), to find that the award of attorneys' fees and expenses is warranted. In the M&O, the Court found

that *"[relators'] misconduct has been willful, extreme, and extended"* (M&O at 25 (quoting *Sloane v. Thompson*, 128 F.R.D. 13, 15 (D. Mass. 1989)) (emphasis added) (alteration in original)), and reflected "*a pattern of disregarding orders from this and other courts*," including their "refus[al] to disclose what documents Langton received in 2013" (M&O at 22–23 (emphasis added)). The Court also recognized that "*DePuy has certainly been prejudiced by relators' actions*" (*id.* at 23 (emphasis added)), which have imposed enormous, disproportionate, and unwarranted costs upon DePuy.

Because Relators' claims were premised on protected, confidential information and were maintained, in part, through active measures since the filing of the operative second amended complaint (**SAC**) to conceal information and mislead the Court—resulting in "six years" of unnecessary litigation (*id.* at 23–24)—DePuy is entitled to recover the full costs of its litigation expenses and attorneys' fees from Relators and Mr. Brooks.

Prevailing legal authority supports DePuy's recovery of expenses and fees beginning from May 4, 2015—the date Relators filed their affidavits "certif[ying] to the court that they had completed" the "task" of confirming that their "complaint did not contain confidential information" (*id.* at 23–24). DePuy estimates that the expenses and fees it could reasonably seek from that date forward total approximately $7 million.

However, through this motion, DePuy seeks to recover only the fees and expenses it incurred following Relators' December 20, 2019 motion for clarification (#358, **Relators' December 20, 2019 Motion**), when Mr. Brooks reversed Relators' prior litigation position and embarked on a litigation strategy to "*purposefully hid[e] documents that would hurt the position they have taken on DePuy's motions*" (M&O at 23 (emphasis added)). That approach undeniably was orchestrated by Mr. Brooks, "an experienced False Claims Act lawyer" (#354, at

3), whom Relators brought back as their counsel at the tail end of the discovery period and who executed the strategy of discovery obstruction. Since then, Mr. Brooks has needlessly protracted these proceedings at almost every turn, which, while obvious before, has become crystal clear through his recent bevy of frivolous and vexatious post-M&O motions (*see* #637).

While DePuy does not make a motion of this nature lightly, it nevertheless is compelled to seek recovery of a portion of the enormous, disproportionate, and unwarranted costs it has suffered as a result of the aforementioned conduct. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (recognizing that attorneys' fees awards are not punitive and go "no further than to redress the wronged party 'for losses sustained'") (quoting *Mine Workers v. Bagwell*, 512 U.S. 821, 829 (1994) (citation omitted)). For these reasons, through subsequent proceedings prescribed by Federal Rule of Civil Procedure 54(d)(2)(C) ("The court may decide issues of liability for fees before receiving submissions on the value of services."), DePuy is prepared to submit documentation supporting a recovery of approximately $2.4 million representing its post-December 20, 2019 fees and expenses.

## BACKGROUND

A.    Relators' May 4, 2015 Affidavits

On March 18, 2015—two months after the Honorable David A. Katz found, following Relators' admissions, that they violated the protective order in the ASR MDL (*see* Katz Order, at 2),[1] and more than seven months after the United States declined to join in Relators' lawsuit (#32)—the Honorable F. Dennis Saylor, IV found that Relators' prior complaint in this action was "tainted . . . in light of Judge Katz' Order" (#104 (**Saylor Order**), at 27:2–5). Instead of

---

[1]    The **ASR MDL** is *In re: DePuy Orthopaedics, Inc. ASR Hip Implant Prods. Liab. Litig.*, No. 10-md-02197 (N.D. Ohio), and the **Katz Order** is the January 5, 2015 Order in the ASR MDL (ECF No. 862). The **MDL Litigations** are the ASR MDL and *In re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, No. 11-md-2244 (N.D. Texas) (the **Pinnacle MDL**).

dismissing the action outright, Judge Saylor permitted Relators to file the SAC, but he ordered

that it be "accompanied by affidavits from relators sworn to under the pains of perjury that

certify that the second amended complaint does not violate any relevant court order, including

the protective orders issued in the MDL proceedings in the Northern District of Ohio or the

Northern District of Texas or the order issued by the court in Ohio on January 5, 2015" (the

**Saylor Order**). On May 4, 2015, Relators filed the required affidavits (##115-3; 115-4), which

they amended thereafter (##119-6; 119-7).

      B.    <u>The First Circuit's Remand and Pre-December 20, 2019 Discovery</u>

      On July 26, 2017, the First Circuit issued its decision affirming in part and reversing in

part the District Court's decision to dismiss the SAC. *United States ex rel. Nargol v. DePuy*

*Orthopaedics, Inc.,* 865 F.3d 29 (1st Cir. 2017). While affirming most of Judge Saylor's

dismissal decision, the First Circuit allowed Relators to pursue their allegations concerning

alleged manufacturing defects. Importantly, "the First Circuit's opinion regarding DePuy's 2015

motion to dismiss quoted the second amended complaint's QA-derived statistics twice, and

found that at least one of those statistics ('that more than half of those implants fell outside the

specifications approved by the FDA') supported a finding that Relators had satisfied Rule 9(b)."

(M&O at 15 (quoting *DePuy*, 865 F.3d at 41).)

      Following the First Circuit's decision, discovery commenced and the parties consented to

proceed before this Court (#318). After the Court granted Relators' first unilateral request for an

extension of the discovery schedule (#343), the Court held a conference to discuss outstanding

discovery issues, including Relators' discovery deficiencies identified by DePuy. (*See* ##329;

337.) During this October 10, 2019 Conference, the Court observed that the Court's "priority" is

to make sure that "on December 2nd everything has been handed over," and that "unless there's

a really good reason, whatever gets supplemented after that will not be used. So that's it." (#351,

at 63:19–25; 71:19–72:2.) Relators' counsel appearing at that conference (Justin Presnal, Esq.) agreed with the Court, noting that Relators "are committed to producing **everything** by the deadline" and, regarding DePuy's outstanding request for documents and testimony from Ann (Wilson) Holland of QA Consulting, Inc. (**QA**), specifically agreed that DePuy is "entitled to see any data she got, communications that describe the data that she's getting . . . ." (*Id.* at 66:18–67:13; 68:7–17 (emphasis added).)

C.    Relators' Discovery Obstruction

On November 26, 2019, Ross B. Brooks, Esq., of The Brooks Law Firm moved for leave to reappear[2] *pro hac vice* as counsel for Relators (#353) and, on December 3, 2019, the Court granted his application (#355).

On December 2, 2019—the then-deadline for the completion of document production—Relators filed another motion to extend the schedule, from December 2, 2019 to January 6, 2020. (#354, at 3.) One of the stated purposes for the extension was Mr. Brooks' reappearance in the case. Relators noted:

> Mr. Brooks is an experienced False Claims Act lawyer. Germane to this motion, Mr. Brooks is familiar with the documents and communications that were collected by his former firm during their representation of the Relators, and will be reviewing those files to ensure that any additional responsive, non-privileged materials are also produced. Mr. Brooks is also familiar with the outstanding discovery issues recently discussed at the October 2019 discovery status conference.

(*Id.*)

On December 10, 2019, the Court obliged Relators' request but admonished:

> The court now makes clear that the new deadline for completion of document production, January 6, 2020, applies to all documents, **including third-party documents**, not just those in the relators' possession, custody, or control. **The court does not anticipate granting any further motions for extensions.**

---

[2]    Mr. Brooks was admitted *pro hac vice* and designated as counsel for Relators in this action on August 20, 2014 (#49). Mr. Brooks subsequently withdrew his appearance on April 30, 2018 (#296), and was readmitted *pro hac vice* and designated as counsel for the Relators on December 3, 2019 (#355).

(#357 (emphases added).)

On December 20, 2019, Relators filed a motion purporting to seek, *inter alia*, clarification of the December 10, 2019 Order. (#358, **Relators' December 20, 2019 Motion.**) That motion was Relators' first substantive court submission signed by Mr. Brooks since he withdrew his appearance in 2018, and Mr. Brooks has signed and filed every Relators' submission of any significance ever since. Importantly, in Relators' December 20, 2019 Motion, Mr. Brooks reversed the position that Mr. Presnal had articulated regarding the production of QA documents just two months earlier, and argued that Relators could not produce those documents because "QA['s] analyses . . . *contain information Relators received in their capacities as MDL experts*," and therefore, production to DePuy in this action would violate the Katz Order, or the protective orders entered in the MDL Litigations (#359, at 8 & n.9 (emphasis in original)).

The change of position was part of an overall effort to convince the Court to allow Relators "to re-tool their litigation strategy." (#404, at 14.) As a part of that strategy, Relators filed a series of motions aimed at, *inter alia*, reopening a document discovery period that had already lasted for more than 29 months (*see* ##358, 361; 373; 399; *see also* #550 (DePuy Status Report discussing Relators' untimely requests for discovery), at 3–4).

In its July 8, 2020 Order, the Court took note of the absurdity of the position that Relators had taken in Mr. Brooks's December 20, 2019 Motion:

> As DePuy points out, the Katz order did not set a boundary of any kind on the relators' obligations to produce documents responsive to discovery requests in this action. (#360 at 3.) Moreover, ***withholding that information from DePuy would be nonsensical, as DePuy was the originator of the information in the MDL litigation***. Knowing which of the confidential DePuy documents were provided to QA, and when, will enable DePuy to determine whether relators violated Judge Katz's confidentiality order, and, if so, file any appropriate motion to strike or dismiss.

(#414 (**Kelley Order**), at 12 (emphasis added).) In the same order, the Court granted DePuy's

motion to compel all of Relators' then-outstanding discovery obligations (*see id.* at 13–14), and

reaffirmed the applicability of the Katz Order to this case, finding that Relators "are prohibited

from using any of the information they received in their capacities as experts in the MDL

litigations to prosecute the present case" (*id.* at 11).

After Relators and Mr. Brooks failed to comply with nearly every aspect of the July 8,

2020 Order (*see* ##449–50), the Court entered a scheduling order for DePuy's motion to strike

and dismiss the SAC that required Relators to "provide to DePuy any further discovery

concerning the motion to strike and dismiss the operative complaint" by February 19, 2021.

(##499; 506.) During a conference on January 19, 2021, the Court told Mr. Brooks with respect

to that production deadline that "if certain information cannot be produced, there needs to be a

very good reason why not, or you risk, as I said, having an adverse inference taken against you."

(Jan. 19, 2021 Tr. at 64:25–65:03.) During a February 5, 2021 conference, the Court elaborated:

> If it turns out that your -- you can't demonstrate that QA only relied on public
> documents and DePuy is able to somehow show there's something you're not
> telling them or you're not giving them that enables you to prove that, then I will
> draw an adverse inference against you. . . . And if DePuy is then going to point to
> some summary chart or something, I don't know what, that your expert gave her,
> your relator gave her in order to rely on, and DePuy is unable to trace the origin of
> that information and so you can't show that it's been public, made public, then
> that's going to be a big problem, I think.

(#509, at 18:9–23.)

On February 12, 2021, DePuy wrote to Mr. Brooks to specify the categories of

documents that DePuy expected Relators to provide in order to avoid an adverse inference.

(#520-22.) DePuy's request included, *inter alia*, "[a]ll documents and communications sufficient

to identify 'what were the relators relying on to get' the information set forth in the 'summary

document[s]' they provided to QA." (*Id.* at 2 (quoting #509, at 17:4–10) (second alteration in

original).) On February 19, 2021, Mr. Brooks made a production of fourteen documents on behalf of Relators, none of which contained information to allow DePuy "to trace the origin of [the] information" Relators provided to QA in the Summary Documents. (#520-1 ¶¶ 26–27; *cf.* #509, at 18:9–23.)

In addition to their indefensible "refus[al] to disclose what documents Langton received in 2013," which suggested "that they are purposefully hiding documents that would hurt the position they have taken on DePuy's motions" (M&O at 23), Relators and Mr. Brooks have engaged in numerous other instances of obstructive conduct. Among other things, Mr. Brooks has, on Relators' behalf:

(i)     issued third-party subpoenas after the deadline for production of third-party documents (*see* ##365, at 7–8; 376, at 5–7; 416; 434);

(ii)    refused to even respond to multiple outstanding discovery questions raised during a meet-and-confer discussion—questions that were outlined for Relators' convenience in follow-up correspondence (*see* #388-2)—necessitating DePuy's successful March 6, 2020 motion to compel (*see* ##388; 414);

(iii)   refused to produce responsive documents from a set of over 23,000 documents that they acknowledge—using their own responsiveness criteria—contained upwards of 7,100 responsive documents (##388; 450, at 3, 13–14);

(iv)    failed to comply with DePuy's requests for targeted discovery to address gaps in Relators' document production (#450, at 14–16); and

(v)     failed to comply with nearly every aspect of the July 8, 2020 Order, which had directed relators to resolve their outstanding discovery deficiencies (#450, at 18–19), necessitating DePuy's September 11, 2020 motion to compel (*see generally* #450).

D.     The M&O

On November 10, 2021, the Court issued the sealed M&O, which allowed DePuy's motion for reconsideration and dismissed this action with prejudice. In allowing DePuy's motion for reconsideration, the Court found that Relators took the Pinnacle head diameter and tolerance from a Pinnacle head drawing that Relator Langton received from plaintiffs' counsel in the

Pinnacle MDL, then used it "to determine the Head diameter and tolerance levels in millimeters that they then provided to QA." (M&O at 20.) That information, the Court concluded, "was confidential and subject to a protective order that Langton had signed prior to receiving it, and that information remains confidential today." (*Id.*) The Court also found that "inclusion of allegations derived from that information in the second amended complaint was in violation of the Pinnacle MDL protective order, Judge Saylor's order, and this Court's order" and "contrary to relators' sworn affidavits that the second amended complaint did not contain confidential information in violation of any relevant court order." (*Id.* at 20–21 (citations omitted).) The Court's findings were based, in significant part, on adverse inferences that were required because Relators "refuse[d] to disclose what documents Langton received from plaintiffs' counsel in November 2013" (*id.* at 20), and provided "different account[s] of how Langton arrived at the Head measurements they provided to QA in November 2013" (*id.* at 12); thus, the Court was forced to "supply details on its own" (*id.* at 19).

The Court also made explicit findings regarding: (i) Relators' conduct during discovery, noting "the court ordered relators to produce to DePuy [evidence] regarding their work with QA," but that "relators[] continued" to "fail[] to provide DePuy with documents they had been ordered to produce" (*id.* at 16, 20); (ii) the "troubling mystery" that was the removal of an "AttyEyesOnly" designation from Pinnacle drawings (*id.* at 9, 19); and (iii) "Relators' seeming inability to comprehend and comply with their confidentiality obligations" (*id.* at 25 n.20).

Ultimately, Relators' "poor record-keeping and investigation into the source of their allegations," failure to discharge their "obligation to keep track of the information they received and to know whether it was subject to a protective order," refusal "to disclose what documents Langton received in 2013," and serial violations of court orders supported the Court's decision to

dismiss this action pursuant to Federal Rule of Civil Procedure 41(b). (*Id.* at 22–25.)
Specifically, the Court found that "[b]y including allegations which rely on confidential
information in their second amended complaint, relators violated the protective order in the
Pinnacle MDL and two court orders in this case." (*Id.* at 22.) The Court elaborated:

> Not only have relators violated those orders, but they have done so repeatedly over
> the course of this nearly decade-long litigation, evidencing a pattern of disregarding
> orders from this and other courts. Repeated attempts by this court and others to hold
> relators to their obligations have proven futile, making dismissal the most
> appropriate sanction, particularly when the court cannot trust that the remaining
> allegations of the second amended complaint are untainted.

(*Id.* at 22–23.) The Court reiterated that "Relators' frequent and flagrant refusal and/or inability
to comply with multiple court orders warrants dismissal of the case *in toto*, regardless of the
materiality of the challenged allegations." (*Id.* at 25 n.21.)

Importantly, the Court also found that "***DePuy has certainly been prejudiced by relators'
actions***. Had relators complied with Judge Saylor's 2015 order, they would have identified the
confidential information relied upon in their second amended complaint. Instead, they swore—
incorrectly—that the complaint did not contain confidential information and proceeded to litigate
this case for an additional six years." (*Id.* at 23–24 (emphasis added).) The Court also made
findings regarding Relators' intent:

> As for whether their conduct was deliberate: at best, their actions are the result of
> poor record-keeping and investigation into the source of their allegations, while at
> worst, ***their actions could be said to demonstrate an intentional and repeated
> disregard of court orders***. . . . The fact that relators refuse to disclose what
> documents Langton received in 2013 also ***suggests that they are purposefully
> hiding documents that would hurt the position they have taken on DePuy's
> motions.***

(*Id.* at 23 (emphases added).)

ARGUMENT[3]

**I.      Relators' Claims Were Objectively Frivolous and Their Misconduct Willful.**

Independent of their liability under Federal Rule of Civil Procedure 37 (*see infra* Argument § III), Relators are responsible for DePuy's reasonable fees and expenses arising from their frivolous FCA claims and their willful misconduct throughout this action.

The FCA allows a court to award reasonable attorneys' fees and expenses to defendants who prevail in an FCA action in which the United States has declined to intervene if "the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). A claim is frivolous in this context "when, viewed objectively, it may be said to have no reasonable chance of success and present no valid argument to modify present law." *United States ex rel. Bierman v. Orthofix Int'l, N.V.*, 113 F. Supp. 3d 414, 429 (D. Mass. 2015).

Separately, the Court may use its inherent powers to assess attorneys' fees "as a sanction for the willful disobedience of a court order" or "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (internal quotation marks omitted). Such sanctions "serv[e] the dual purpose of vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy." *Id.* at 46 (second and third alterations in original) (citation omitted). Although the Court's inherent powers "must be exercised with restraint and discretion," *id.* at 44–45, these powers may be employed to

---

[3] A motion for attorneys' fees and expenses based on statutory authority must be filed within 14 days of the entry of judgment, FED. R. CIV. P. 54(d)(2)(B)(i), but the Court may "decide issues of liability for fees before receiving submissions on the value of services," *id.* 54(d)(2)(C); *see, e.g.*, *Ins. Recovery Group, Inc. v. Connolly*, 977 F. Supp. 2d 16, 27–8 (D. Mass. 2013) (granting costs and attorneys' fees to plaintiff for defense counsel's violation of discovery orders and giving plaintiff 30 days "to submit documentation of the expenses for which it requests reimbursement").

"'sanction . . . litigation abuses which threaten to impugn the district court's integrity or disrupt its efficient management of [case] proceedings,'" *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 426 (1st Cir. 2015) (alterations in original) (citation omitted).

The M&O supports Relators' liability under both standards.

*First*, with respect to the FCA, the Court found that the SAC included "allegations derived from . . . information" that "was confidential and subject to a protective order that Langton had signed prior to receiving it," and thus, the SAC "was in violation of the Pinnacle MDL protective order, Judge Saylor's order, and this court's order." (M&O at 20.) As a result, the SAC objectively had no reasonable chance of success at the time it was filed. Indeed, this Court has found that Relators' case would not have continued had they disclosed their use of confidential information:

> **DePuy has certainly been prejudiced by relators' actions.** Had relators complied with Judge Saylor's 2015 order, they would have identified the confidential information relied upon in their second amended complaint. Instead, they swore— incorrectly—that the complaint did not contain confidential information **and proceeded to litigate this case for an additional six years**.

(*Id.* at 23–24 (emphases added).) And even though Relators' knowledge need not be assessed under this objective standard, *United States ex rel. Bierman v. Orthofix Int'l, N.V.*, 113 F. Supp. 3d 414, 429 (D. Mass. 2015), that Relators tried to "back into the [confidential] measurements [underlying the SAC] through mathematical contortions," and provided "multiple differing accounts of how Langton arrived at the measurements" that the Court found "lack credibility" (M&O at 19–20), demonstrates that Relators were fully aware that the SAC was based on confidential information and, therefore, could not succeed if that information came to light.

The First Circuit allowed Relators to pursue their allegations concerning alleged manufacturing defects in 2017. *United States ex rel. Nargol v. DePuy Orthopaedics, Inc.,* 865

F.3d 29 (1st Cir. 2017). But, at that time, the First Circuit had no reason to suspect—much less have evidence in the form of an adverse inference finding (M&O at 19–21)—that the SAC contained "allegations derived from . . .  information" that "was confidential and subject to a protective order that Langton had signed prior to receiving it" (*id.* at 20). And these were not insignificant allegations to the First Circuit; as this Court observed in the M&O, "the First Circuit's opinion regarding DePuy's 2015 motion to dismiss *quoted the second amended complaint's QA-derived statistics twice*" in reaching the conclusion "that at least one of those statistics ('that more than half of those implants fell outside the specifications approved by the FDA') supported a finding that Relators had satisfied Rule 9(b)." (*Id.* at 15 (quoting *DePuy*, 865 F.3d at 41 (emphasis added).) The current record is clear that Relators' SAC that was sustained, in part, by the First Circuit in 2017, was based on confidential and proprietary information that Relators were not permitted to use, and therefore, that the SAC had no reasonable chance of succeeding.

 *Second*, separate from the FCA, the Court may direct Relators to pay attorneys' fees and expenses pursuant to its inherent powers "as a sanction for the willful disobedience of a court order," *Chambers*, 501 U.S. at 45–46 (internal quotation marks omitted), and for "litigation abuses which threaten to impugn the district court's integrity or disrupt its efficient management of [case] proceedings,'" *AngioDynamics*, 780 F.3d at 426 (alterations in original). The M&O could not have been clearer in this regard: *"[relators'] misconduct has been willful, extreme, and extended*." (M&O at 25 (quoting *Sloane v. Thompson*, 128 F.R.D. 13, 15 (D. Mass. 1989)) (emphasis added) (alteration in original).) The Court continued:

> By including allegations which rely on confidential information in their second amended complaint, relators violated the protective order in the Pinnacle MDL and two court orders in this case. "Without a doubt, the disregard of court orders *qualifies as extreme behavior* . . . ." [*Malot v. Dorado Beach Cottages Assocs.*, 478

F.3d 40, 44 (1st Cir. 2007)]. Not only have relators violated those orders, *but they have done so repeatedly over the course of this nearly decade-long litigation, evidencing a pattern of disregarding orders from this and other courts*. Repeated attempts by this court and others to hold relators to their obligations have proven futile, making dismissal the most appropriate sanction, particularly when the court cannot trust that the remaining allegations of the second amended complaint are untainted.

(M&O at 22–23 (emphases added).) The Court also pointed to specific evidence that Relators'

conduct was "*an intentional and repeated disregard of court orders*," including "[t]he fact that

relators refuse to disclose what documents Langton received in 2013[,] . . . *suggest[ing] that*

*they are purposefully hiding documents that would hurt the position they have taken*." (*Id.* at

23 (emphases added).)

Relators' misconduct is all the more extreme in view of the significant fees Relators have

earned as experts testifying against DePuy in litigation. (*See* SAC ¶¶ 68, 72.) Relators are not the

typical "whistleblowing insiders" for whom the FCA seeks to reward with financial incentives.

*See United States ex rel. Ven-A-Care of the Fla. Keys, Inc. v. Baxter Healthcare Corp.*, 772 F.3d

932, 944 (1st Cir. 2014) (observing that a "central purpose of the False Claims Act's qui tam

provisions" is finding "'the golden mean between adequate incentives for whistle-blowing

insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who

have no significant information to contribute of their own'") (quoting *Graham Cty. Soil & Water*

*Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 294 (2010)). Rather, this

litigation is a manifestation of a calculated strategy to use DePuy's own confidential information

for Relators' benefit. (*See* Katz Order; Saylor Order; Kelley Order.)

Relators' conduct also is prolonged—extending back to 2015 when Relators failed to

undertake the diligence necessary to identify "the confidential information relied upon in their

second amended complaint. Instead, they swore—incorrectly—that the complaint did not contain

confidential information and proceeded to litigate this case for an additional six years." (M&O at 23–24.) In this regard, "DePuy has certainly been prejudiced by relators' actions." (*Id.* at 23.)

Accordingly, in further recognition of the "willful, extreme, and extended" nature of the conduct at issue (*id.* at 25 (citation omitted)), the Court should impose—in parallel with Relators' Rule 37 liability (*see infra* Argument § III)—attorneys' fees to compensate DePuy for the extreme prejudice it has suffered as a result of Relators' misconduct.

## II.     Ross B. Brooks, Esq. Unreasonably Multiplied These Proceedings.

28 U.S.C. § 1927 allows a court to order a recovery of "excess" attorneys' fees, costs, and expenses against any counsel who "multiplies the proceedings in any case unreasonably and vexatiously." "[W]hile an attorney's bad faith will always justify sanctions" under this statute, bad faith is not a requirement—it is enough that "an attorney's conduct in multiplying proceedings is unreasonable and harassing or annoying." *Cruz v. Savage*, 896 F.2d 626, 631–32 (1st Cir. 1990). If an attorney's actions demonstrate "a studied disregard of the need for an orderly judicial process" or "a reckless breach of the lawyer's obligations as an officer of the court," that conduct is sufficient for ordering a fee recovery. *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 64 (1st Cir. 2008). "The attorney need not intend to harass or annoy by his conduct nor be guilty of conscious impropriety to be sanctioned. It is enough that an attorney acts in disregard of whether his conduct constitutes harassment or vexation." *Cruz*, 896 F.2d at 632.

To determine if "an attorney acted unreasonably and vexatiously in multiplying proceedings, [the Court] should apply an objective standard." *Id.* Courts have considered a variety of conduct as potentially sanctionable under Section 1927, including: "duplicative motions being filed[,] . . . repeated refusals to comply with court orders," *Rossello-Gonzalez v. Acevedo-Vila*, 483 F.3d 1, 7 (1st Cir. 2007), "attempting to introduce evidence on irrelevant matters in the face of numerous admonitions to desist, . . . 'engag[ing] in obfuscation of the

issues, hyperbolism and groundless presumptions,'" *Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228, 246 (1st Cir. 2010) (quoting *Cruz*, 896 F.2d at 634) (second alteration in original), filing sham affidavits, particularly after previously being warned not to do so, *see Escribano-Reyes v. Prof'l Hepa Certificate Corp.*, 817 F.3d 380, 383, 391 (1st Cir. 2016), and filing a frivolous appeal, *Sanchez-Rodriguez v. AT & T Mobility P.R., Inc.*, 673 F.3d 1, 16 (1st Cir. 2012).

Since Mr. Brooks reentered his appearance for Relators on December 3, 2019, DePuy has been forced to endure an array of multiplicitous conduct—from the shifting of strategies that enabled discovery obstruction to countless superfluous submissions, which have unnecessarily drained the resources of DePuy and this Court. As Mr. Brooks was the strategist behind Relators' litigation conduct over the past two years, he should be held "personally" liable—independent of his Rule 37 liability (*see infra* Argument § III)—for the excessive costs, expenses, and attorneys' fees that DePuy has incurred as a result.

The assessment under Section 1927 begins, again, with the M&O, which found that "the court ordered relators to produce to DePuy [evidence] regarding their work with QA," but that "relators[] continued" to "fail[] to provide DePuy with documents they had been ordered to produce." (M&O at 16, 20.) That strategy clearly was directed by Mr. Brooks who, just weeks after reentering his appearance in this action, reversed the position that Relators' counsel had taken just two months prior that Relators "are committed to producing ***everything*** by the deadline" and, regarding DePuy's outstanding request for documents and testimony from Ms. Holland of QA, specifically agreed that DePuy is "entitled to see any data she got, communications that describe the data that she's getting . . ." (#351, at 66:18–67:13; 68:7–17 (emphasis added); *cf.* Relators' Dec. 20, 2019 Mot.) Mr. Brooks then doubled down on Relators' new position with a series of untimely discovery motions in the weeks that followed (*see* ##358;

361; 373; 399)—all aimed at "re-tool[ing] their litigation strategy" (#404, at 14) and reopening a discovery period that had already lasted for nearly two years. Even viewed in the most charitable light, the "nonsensical" (#414) position that Relators took at Mr. Brooks' direction—and the execution of that strategy, which caused a cluttered docket of untimely and frivolous motions— goes beyond acceptable litigation tactics; instead, it evidences "a studied disregard of the need for an orderly judicial process," *Jensen*, 546 F.3d at 64 (1st Cir. 2008).

Mr. Brooks' conduct at issue has extended beyond the discovery period, and has infected even these post-dismissal proceedings, in which he has filed a series of redundant post-M&O motions—each more frivolous and vexatious than the last. (*See* #636.) And worse, he continued to defy the Court's directives regarding the confidentiality of the Pinnacle head and tolerance, requiring DePuy to make multiple emergency applications to ensure that information subject to protective order was immediately removed from the public docket. (*See* #558; 609; *see also* M&O at 25 n.20 ("That DePuy had to file an emergency motion to seal, which the court granted, further illustrates Relators' seeming inability to comprehend and comply with their confidentiality obligations."); #629, at 3–4 ("[A]lthough previously criticized for filing confidential materials on the public docket . . .  relators once again filed materials on the public docket containing information . . . already deemed confidential.").) This flurry of post-M&O activity, which has further delayed the finality of an action that has already "proceeded . . . for an additional six years" beyond what it should have (M&O at 24), is precisely the sort of vexatious and unreasonably multiplicitous conduct that warrants a sanction of Mr. Brooks.

Accordingly, in addition to Mr. Brooks's Rule 37 liability (*see infra* Argument § III), the Court should find that DePuy is permitted to recover its "excess costs, expenses, and attorneys'

fees reasonably incurred" over the past two years from Mr. Brooks "personally," and from his law firm[4], pursuant to 28 U.S.C. § 1927.

## III.   Relators' and Mr. Brooks' Discovery Conduct Mandates an Award of Fees and Expenses.

Pursuant to Federal Rule of Civil Procedure 37, "if a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." FED. R. CIV. P. 37(b)(2)(A). In addition, the rule requires the Court to award fees and expenses caused by the discovery failure: "[i]nstead of or in addition to the orders above, ***the court must order*** the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* 37(b)(2)(C) (emphasis added). And a separate section of Rule 37 provides that if a motion to compel is granted, "***the court must . . . require***" the party or attorney whose conduct necessitated the motion "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Id.* 37(a)(5)(A) (emphasis added). Attorneys' fees and expenses should be imposed jointly and severally against both a party and their counsel "where it is unclear based on the record which is less blameworthy than the other." *See Conning v. Halpern*, 18-cv-12336, 2021 WL 24573, at *5 (D. Mass. Jan. 4, 2021) (citation omitted).

Here, Rule 37 liability is joint and several as to Relators and Mr. Brooks due to their consistent failures to obey this Court's discovery orders—in particular, its orders of October 10,

---

[4]     *See Castellanos Grp. Law Firm, L.L.C. v. Fed. Deposit Ins. Corp. (In re MJS Las Croabas Props., Inc.)*, 545 B.R. 401, 419–21 (B.A.P. 1st Cir. 2016) (discussing the circuit split regarding whether 28 U.S.C. § 1927 applies to law firms before deciding that it does) (citing *Jensen*, 546 F.3d at 64 (vacating and remanding a sanctions order under 28 U.S.C. § 1927 against a law firm for other reasons while not discussing or implying that such an order against a law firm was improper)).

2019 (#351, at 63:19–25; 71:19–72:02), December 10, 2019 (#357), July 8, 2020 (#414, at 13–14), and February 5, 2021 (#509, at 18:9–23) to produce discovery.[5] As the Court already has found through the M&O, Relators "refuse[d] to disclose what documents Langton received from plaintiffs' counsel [in the Pinnacle MDL] in November 2013" (M&O at 20; *see also id.* at 8, 23), thereby "hiding documents"—likely "purposefully"—"that would hurt the position they have taken on DePuy's motions" (*id.* at 23). This refusal "has certainly . . . prejudiced" DePuy as it forced it to defend this case for years following the discovery obstruction. (*See id.* at 23–24.)

As there is no possible justification—much less a "substantial[]" one, *cf.* FED. R. CIV. P. 37(b)(2)(C)—for Relators' discovery failures, DePuy is entitled to recover its fees and expenses beginning from December 20, 2019. It was on this date that Mr. Brooks and Relators reversed their prior representation to the Court that Relators were "committed to producing ***everything*** by the deadline" (#351, at 68:7–17), and instead refused to produce documents that Relators acknowledged were otherwise responsive to DePuy's document requests on the basis of a new litigation position that the Court later found was "nonsensical" (Relators' Dec. 20, 2019 Mot.; #414, at 12). The December 20, 2019 Motion evidences the "suggest[ion]" that Relators were "purposefully hiding documents that would hurt the position they have taken." (M&O at 23.)

All of DePuy's fees and expenses that post-date that motion unquestionably were "caused by the failure" to timely produce this discovery, *cf.* FED. R. CIV. P. 37(b)(2)(C). Indeed, had Relators produced all responsive documents as directed—including "what documents Langton

---

[5]       The October 10 and December 10, 2019 Orders are covered by Rule 37(b) because they each required Relators to produce documents responsive to DePuy's document requests—including the specific categories discussed during the October 10, 2019 conference—by a set deadline. *See Hinds v. Dean*, 15-cv-10073-LTS, 2017 WL 1439661, at *2 (D. Mass. Apr. 21, 2017) ("Because the October 3, 2016 Order required defendant to respond to the document request by a set deadline, it constitutes a discovery order within the meaning of Rule 37(b)(2).") The Court's July 8, 2020 Order then provided Relators with explicit directives regarding their discovery obligations, and the February 5, 2021 Order followed up to explain the consequences of Relators' failures to comply with the Court's directives. *Cf. R.W. Int'l. Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 15–17 (1st Cir. 1991) ("[A] district court cannot dismiss [under Rule 37] without first entering an order commanding production of the specific materials.").

received in 2013" (M&O at 23)—DePuy may have timely discovered the true origins of

Relators' SAC allegations and years of litigation would have been avoided (*cf. id.* at 23–24).

Instead, DePuy was forced to endure two full years of additional litigation following Relators'

December 20, 2019 Motion, which included follow-up attempts to compel Relators to comply

with their discovery obligations (*see, e.g.*, ##399–400; 449–50), resisting Relators' untimely

efforts to reopen a 29-month discovery period (*see, e.g.*, ##429; 444; 461), and engaging in

protracted motion practice on even the most straightforward of issues (*see, e.g.*, ##445, 446, 447

(avoidable briefing necessitated due to Relators' refusal to assent to a motion for impoundment)).

The Court should impose Rule 37 liability jointly and severally among Relators and Mr.

Brooks where, as here, "it is unclear based on the record which is less blameworthy than the

other." *See Conning*, 2021 WL 24573, at *5 (citation omitted). Such recovery should be made

pursuant to both (i) Rule 37(b)(2) for Relators' and Mr. Brooks's failure to obey multiple orders

of discovery, and (ii) Rule 37(a)(5)(A) for DePuy's expenses incurred in connection with its

successful March 6, 2020 motion to compel (#387) on all then-outstanding issues (*see* #414 (July

8, 2020 Order); #435, at 17–18 (DePuy's initial request for its fees incurred in connection with

its March 6, 2020 motion to compel)).

## CONCLUSION

For the reasons set forth above, DePuy requests that the Court award it reasonable costs

and attorneys fees' pursuant to 31 U.S.C. § 3730(d)(4), 28 U.S.C. § 1927, Federal Rules of Civil

Procedure 37(a)(5)(A), 37(b)(2), and 54(d)(2), and/or this Court's inherent powers, in amounts to

be determined in further proceedings.

Dated: December 21, 2021

        Respectfully submitted,

        DEFENDANTS
        DEPUY ORTHOPAEDICS, INC., DEPUY, INC.,
        JOHNSON & JOHNSON SERVICES, INC.

        By their attorneys,


        */s/ Mark D. Seltzer*
        Mark D. Seltzer, Esq.
        (BBO No. 556341)
        Hannah R. Bornstein, Esq.
        (BBO No. 670433)
        Colin T. Missett, Esq.
        (BBO No. 706248)
        NIXON PEABODY LLP
        53 State Street
        Boston, MA  02109-2835
        Telephone: (617) 345-1000

        Adam R. Tarosky, Esq.
        (admitted *pro hac vice*)
        NIXON PEABODY LLP
        799 9th Street NW, Suite 500
        Washington, DC  20001-5327
        Telephone: (202) 585-8000

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2021, I electronically filed the foregoing document with the United States District Court for the District of Massachusetts by using the CM/ECF system. I certify that the parties or their counsel of record registered as ECF Filers will be served by the CM/ECF system:

*/s/ Colin T. Missett*