IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA and THE STATE OF NEW YORK *ex rel.* DR. ANTONI NARGOL and DR. DAVID LANGTON,<br><br>Plaintiffs-Relators,<br><br>v.<br><br>DEPUY ORTHOPAEDICS, INC., DEPUY, INC., and JOHNSON & JOHNSON SERVICES, INC.,<br><br>Defendants. | Case No. 12-10896-MPK<br><br>HONORABLE<br>M. PAGE KELLEY |

**MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR THE RELATORS AND FOR LIMITED STAY TO ENABLE RELATORS TO RETAIN COUNSEL AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

## MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR THE RELATORS AND FOR LIMITED STAY TO ENABLE RELATORS TO RETAIN COUNSEL

James J. Breen and the Breen Law Firm, P.A. (hereinafter collectively "Breen") move the Court pursuant to Local Rule 83.5.2 of the Local Rules of the United States District Court for the District of Massachusetts for leave to withdraw as counsel for the Relators and further suggest and request that the Court grant a brief stay of deadlines with respect to the pending post-final judgment motions to provide the Relators a reasonable amount of time to retain substitute counsel. The following Memorandum of Law is submitted in support of this Motion.

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1 of the Local Rules of the United States District Court for the District of Massachusetts, the undersigned counsel certifies that he has attempted in good faith to confer with Counsel for the Defendants to resolve or narrow the issues presented in this Motion. Counsel for the Defendants have advised the undersigned that the Defendants do not oppose this motion to withdraw as Relators' counsel but "would oppose any application seeking a stay of these proceedings…"

## LOCAL RULE 83.5.2 (d) CERTIFICATION

Pursuant to Local Rule 83.5.2 (d) of the Local Rules of the United States District Court for the District of Massachusetts, the undersigned counsel certifies that he has served this motion to withdraw on the Relators, Dr. Antoni Nargol and Dr. David Langton and on all parties to this

1

this case. Further, the undersigned has been advised by Dr. Nargol and Dr. Langton that they do not oppose this motion to withdraw.

## MEMORANDUM OF LAW

### I. INTRODUCTION

In light of the request for a limited stay to enable the Relators to retain substitute counsel, this Memorandum of Law will be lengthier than is ordinarily the case and will touch on certain merits issues as necessary to adequately present the circumstances supporting the request.

On August 17, 2021, the Court admitted Breen, pro hac vice, to appear as counsel for the Relators Dr. Antoni Nargol and Dr. David Langton. (#569). Breen joined the Relators' counsel team following the Court's July 6, 2021, Order (# 542) initially denying the Defendants' Motion to Strike Nonconformance Allegations in the Relators' Corrected Second Amended Complaint and Motion to Dismiss Second Amended Complaint (# 519). Breen's anticipated role was to recruit, organize and lead a trial team to enable the Relators to move forward expeditiously to trial. However, this was made impractical, and economically unfeasible, by the motion practice surrounding the Defendants' Motion for Reconsideration (#555) of the Court's July 6, 2021, Order, and the Court's resulting Order of November 10, 2021 dismissing the Relators' Second Amended Complaint ("SAC"), with prejudice. (#606, #630)

The Court initially filed its November 10, 2021, Memorandum and Order under seal (#606), pending the Court's determination of DePuy's request that certain information be redacted,

2

and it was then filed on the public docket on December 8, 2021 (#630). The Court has confirmed (#635) that it considers final judgement to have been entered on December 7, 2021 (#624). Pursuant to the Court's order allowing the Relators to file an Omnibus Motion and Memorandum of Law (#640, #642), the Relators timely filed their Motion for Reconsideration and Combined Motion Pursuant to Rules 52, 59, 60 and 83 with respect to the Memorandum and Order and certain other related orders on January 4, 2022. (#648, #649) On January 6, 2022, the Relators filed a Notice of Appeal (#650), which, pursuant to F.R.A.P. 4 (a) (4) (B), "becomes effective to appeal a judgment, in whole or in part, when the order disposing of the last" motion set forth in Rule F.R.A.P. 4 (a) (4) (B).

On December 21, 2021, the Defendants filed a Motion for Attorney's Fees (# 643) against the Relators as well as Lead Counsel, Ross Brooks. The Defendants' motion seeks recovery against the Relators based upon the sanctions provisions of the False Claims Act, 31 U.S,.C 3730 (d) (4) (#644,15), jointly against the Relators and Mr. Brooks pursuant to Rule 37, FED. R. CIV. P. 37(b)(2)(A) (#644, 22) and against Mr. Brooks pursuant to 28 U.S.C. § 1927 (#644, 19). The Defendants' Sanctions Motion was filed immediately before the extended holiday period and twelve days before the 28-day deadline for filing the Relators' post judgement motions. The Court enlarged the time for the Relators to respond to the Defendants' Sanctions Motion until January 14, 2021 but denied (#647) the Relators initial request for a longer stay (#645).

Local Rule 83.5.2 (c) (1) requires counsel to secure leave of the Court for a withdrawal not "preceded or accompanied by the appearance of successor counsel" or when "(A) any motion is pending in the case" and Local Rule 83.5.2 (c) (2) provides that "[a]n attorney may seek leave of court to withdraw his or her appearance for good cause shown."

3

The undersigned is a member of the Bars of the States of Florida and Georgia, and the Florida and Georgia Rules of Professional Conduct are consistent with the following Massachusetts Rules of Professional Conduct pertinent to a lawyer's withdrawal from representation:

1. Rule 1.2 Scope of Representation and Allocation of Authority Between Client and Lawyer, provides at subparagraph (c): "A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent."

As noted above, the intended scope of Breen's representation of the Relators in this matter was precluded by the motion practice on reconsideration of the Court's July 6, 2021Order and resulting dismissal, and did not progress to the negotiation of the anticipated new fee agreement. Currently, Breen does not anticipate charging the Relators a fee if the Court grants this motion for leave to withdraw.

2. Rule 1.7: Conflict of Interest: Current Clients provides at subparagraph (a): "Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

It is Breen's understanding that current Lead Counsel, Ross Brooks, has determined that the Defendants' pending Sanctions Motion, brought jointly against the Relators and Mr. Brooks, has created a conflict of interest requiring his withdrawal. While Mr. Brooks and Breen are not in the same law firm and the Defendants have not brought a sanctions claim against Breen, they request that all attorney's fees they have incurred in this matter since December 20, 2019 be awarded against the Relators and their counsel, jointly and severally pursuant to Rule 37 (b) (2) (C ). (# 644. 23) and counsel pursuant to 28 U.S.C. § 1927. The Defendants even cast

4

their net over all filings on behalf of the Relators following the November 10, 2021, Memorandum and Order under seal, including presumably, the Relators' good faith attempts to be heard on questions such as the First Amendment standard applicable to sealing court records, including redactions to the final order (#607)[1], and DePuy's burden with respect to its motion to seal an MDL Trial Exhibit (#614).[2]

While Breen believes that the Defendants' position as to sanctions is unfounded, it has led to the inevitable result that present lead counsel must withdraw, while any new lead counsel will have to independently evaluate the ethical issues presented by the wide and continuing scope of the Defendants' pending Sanctions Motion, including their position that motions the Relators filed after the November 10, 2021 Order constitutes sanctionable conduct.

---

[1] "Under the common law, there is a long-standing presumption of public access to judicial records. *See Nixon* v. *Warner Communications, Inc.*, 435 U.S. 589, 597, 55 L. Ed. 2d 570, 98 S. Ct. 1306 (1978); *see also United States v. Connolly (In re Boston Herald, Inc.)*, 321 F.3d 174, 189 (1st Cir. 2003). 3 This presumption of access "helps safeguard the integrity, quality, and respect in our judicial system, and permits the public to keep a watchful eye on the workings of public agencies." *In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir. 1994) (internal quotation marks and citations omitted)."
Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.), 422 F.3d 1, 6, (1st Cir, 2005).

[2] "Rule 7.2(d) explains that motions for impoundment must be filed and ruled upon prior to submission of the actual material sought to be impounded, unless the court orders otherwise. It is well established that a case filed in federal court and the documents filed in the case are presumed to be public. See In re Providence Journal Co., Inc., 293 F.3d 1, 13-14 (1st Cir. 2002); FTC v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 408 (1st Cir. 1987). In keeping with the strong public policy favoring access to court records, most judicial records may be sealed only if the court finds compelling reasons. National Org. for Marriage v. McKee, 649 F.3d 34, 70 (1st Cir. 2011), cert. denied, 565 U.S. 1234 (2012). In considering a request to overcome the presumption of public access to a document, the court balances the public's right of access to judicial documents against the competing private interests at stake in a particular case. See Dahl v. Bain Capital Partners, LLC, No. 07-12388-EFH, 2012 U.S. Dist. LEXIS 131126, 2012 WL 4045194, at *1 (D. Mass. Sept. 14, 2012). "[O]nly the most compelling reasons can justify non-disclosure of judicial records." McKee, 649 F.3d at 70 (internal citation and citation to quoted cases omitted)."
Aung v. Prettenhofer (D. Mass. 2020)

3. Rule 1.16 Declining or Terminating Representation provides, in pertinent part, at subparagraph (a): "Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (1) the representation will result in violation of the rules of professional conduct or other law…"

It is Breen's understanding that Mr. Brooks has concluded that this provision of the Rules of Professional Conduct, or the equivalent rule governing members of the New York Bar, requires him to seek leave of the Court to withdraw. While Breen has not been, and does not intend to be, engaged as successor lead counsel, as noted above, the broad scope of the Defendants' Sanctions Motion may create an ethical dilemma for any potential successor lead counsel.

4. Rule 1.16 Declining or Terminating Representation provides, in pertinent part, at subparagraph (b) "Except as stated in paragraph (c), a lawyer may withdraw from representing a client if: (1) withdrawal can be accomplished without material adverse effect on the interests of the client; …(6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or (7) other good cause for withdrawal exists."

Breen was not engaged to represent the Relators with respect to the post final judgment motions, DePuy's Sanctions Motion or an appeal and has no compensation agreement with the Relators to provide such representation. Breen further respectfully submits that, of all counsel of record, he is among the least knowledgeable about and has no or very limited access to the huge record in this FCA action and the related MDL proceedings.

5. Rule 1.16 Declining or Terminating Representation provides, in pertinent part, at subparagraph (c): "If permission for withdrawal from employment is required by the rules of a tribunal, a lawyer shall not withdraw from employment in a proceeding before that tribunal without its permission."

This Rule's application is self-explanatory.

6. Rule 1.16 Declining or Terminating Representation provides, in pertinent part, at subparagraph (d):  Upon termination of representation, a lawyer shall take steps to

> the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee or expense that has not been earned or incurred

Given the timing of the Defendants' December 21, 202, Sanctions Motion, there was not sufficient time for the Relators to engage successor lead counsel to complete the motions and memoranda of law due on January 4, 2022. Accordingly, Mr. Brooks took action to ensure that the Relators' interests were protected by completing the motions and memoranda, which were in process, and by filing a Notice of Appeal which will become effective, or moot, after the Court disposes of the Motions. However, now that the mandatory 28-day deadlines have been met, the Court has discretion to stay these proceedings to enable successor counsel to be retained and to deal with any ethical issues created by the scope of the Defendants' Sanction Motion.

## II.

## ARGUMENT

"'The grant or denial of an attorney's motion to withdraw in a civil case is a matter addressed to the discretion of the trial court and will be reversed on appeal only when the trial court has abused its discretion' See *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 135 (1st Cir. 1985) (quoting *Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081, 1087 (7th Cir. 1982))" *Lieberman v. Polytop Corp.*, 2 Fed. Appx. 37 (1st Cir. 2001) (finding that the trial court abused its discretion in denying the attorney's motion to withdraw under the facts presented).

In the present case, the Defendants waited until after the entry of final judgement to assert their claims for sanctions and have now inserted an entirely new, and substantial, dispute into the

proceedings. The new dispute is one in which the Relators' lead counsel can no longer represent them and in which the amount in controversy is millions of dollars. Importantly, none of the bases for an attorney's fees award involves a standard fee shifting statute; each of them requires a finding of fault or sanctionable conduct and the Relators should be allowed a full and fair opportunity to defend themselves, including, but not limited to, by engaging qualified counsel to consider, and if determined appropriate, litigate issues including, but not limited to, the following:

1. The timeliness of the Defendants' post final judgment motion. Rule 54 (d.) (2) (E), by its terms, is inapplicable to sanctions under Rule 37 or pursuant to 28 U.S.C. § 1927, and a substantial question exists as to whether it is applicable to 31 U.S.C. § 3730 (d) (4). The Defendants waited until after discovery had closed and final judgement was entered before proceeding with their motion for attorney's fees. The November 10, 2021, Memorandum and Order makes no finding that the Relators violated a specific discovery order, the Court's July 6, 2021 Order denied the Defense motion to dismiss on this basis and the Defendants did not seek reconsideration of this part of the Court's initial order. Instead, as the Relators understood these proceedings, the Court sustained the burdensomeness and privilege related discovery objections, raised by their counsel, and made the adverse inference resulting in its determining one or more facts adversely to the Relators. Yet, the Defendants build their Sanctions Motion on alleged intentional discovery violations by the Relators individually, long after the alleged fact, creating circumstances under which the timeliness of their motion should be fairly evaluated.

2. In addition to the timeliness issue, the Relators should be given the opportunity to address the question of whether the November 10, 2021, Memorandum and Order

    contains the requisite findings that they violated any discovery order in their individual capacities, a requirement before they can be held personally responsible for Rule 37 sanctions for their counsel's conduct of discovery. Importantly, there has been no finding that the Relators did anything other than rely on the advice of MDL counsel and/or their FCA qui tam counsel with respect to the discovery objections that were raised and sustained in the present case.

3. 31 U.S.C. § 3730 (d) (4) provides: " If the Government does not proceed with the [FCA qui tam] action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was **clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment**." (Bold emphasis added). The Relators should be given a fair and reasonable opportunity to defend themselves, as Congress intended, so that potential relators are not discouraged from disclosing fraud on the taxpayer and proceeding with meritorious cases. The Court has adversely inferred that the Relators considered a protected document revealing the Subject Information considered in a formula used to calculate one of two nonconformance rates alleged at Paragraph 349 of the SAC. However, there has been no showing that the Relators initially learned of the Defendants' FCA violations through any improper means. To the contrary, they discovered the manufacturing defects underlying their FCA qui tam action through their work as medical professionals caring for patients, consistent with the strong public policy purpose of the False Claims Act.

    It must be remembered that DePuy repeatedly attacked the Relators' SAC, and, in the end, focused on only one, of two, falsity rate allegations at Paragraph 349, with the larger 50% plus allegation for the Pinnacle Liner remaining intact along with all other allegations in the SAC.  Also, there is no dispute that the Relators provided the Defendants with the QA Report in April 2015, before the SAC was filed, which revealed from the outset the fact that the diameter of the Pinnacle Head used in the formula was converted to the five decimal number the Court focused on in its September 16, 2021 Order requiring the Relators to, again, explain their calculations. If the Relators' FCA qui tam action must fail in the end for the reasons set forth by the Court, the Relators should still be allowed to defend themselves against the very different assertion that their *entire* FCA qui tam action was "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment".

4. The Defendants' Sanctions Motion and the November 10, 2021 Memorandum and Order focus on various actions by counsel, including the filing of the explanation of the calculation of the Pinnacle Head diameter to a specific 5 decimal number pursuant to the Court's September 16, 2021, Order. In this regard, the Relators should be allowed the opportunity to show, through substitute counsel, that, while they did not make decisions as to what to file under seal, they also never made the disclosure of the fact that the "Subject Information" appeared on confidential DePuy engineering drawings; however, the Defendants made this very disclosure through the admission of public trial exhibits and by publicly filing their October 1, 2021 "Emergency Motion" (#588).

" Generally, in evaluating whether to issue a stay, a court will consider three factors: (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party without a stay; and, (3) judicial economy." *Good v. Altria Grp., Inc.*, 624 F.Supp.2d 132, 134 (D. Me. 2009). However, "[t]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Dellinger v. Mitchell*, 442 F.2d 782, 786, 143 U.S. App. D.C. 60 (D.C. Cir. 1971) (citation and internal quotation marks omitted)." *Murray v. Wal-Mart Stores, Inc.,* 2017 U.S. Dist. LEXIS 34583 (D. Me., Mar. 10, 2017). See also, *Digital Equipment Corp. v. Currie Enter.,* 142 F.R.D. 8 (D. Mass 1991).

In the present case, a limited stay will cause no prejudice to the Defendants; however, the lack of a stay will cause the Relators great prejudice. A limited stay will also be in the interests of judicial economy as it will provide a reasonable opportunity for new counsel to evaluate the many issues presented by the Defendants' Sanctions Motion. Hopefully, this will limit the need for additional motion practice arising from the conflict questions created by the Defendants' insistence that all fees incurred since December 20, 2021 must be awarded as sanctions, including those arising after the Court's November 10, 2021 Order.

## III.

## CONCLUSION

Breen respectfully requests that the Court grant this Motion for Leave to Withdraw as Counsel for the Relators, for good cause shown, and grant the limited stay to allow the Relators to engage new lead counsel for the reasons aforesaid.

Dated:  January 7, 2022                     Respectfully submitted,


 /s/ James J. Breen
James J. Breen
(admitted *pro hac vice*)
Florida Bar No. 297178
THE BREEN LAW FIRM. P.A.
11720 Amber Park Drive, Suite 160
Alpharetta, Ga. 30009
Telephone: (678) 735-5052
jbreen@breenlaw.com


*Counsel for Plaintiff-Relators*
*Antoni Nargol and David Langton*

## CERTIFICATE OF SERVICE

      I hereby certify that on January 7, 2022, I electronically transmitted the foregoing document to the Clerk of the United States District Court using the CM/ECF system for filing and service on all parties and counsel.

        /s/  Jason W. Morgan
Jason W. Morgan (BBO #633802)
Drohan Tocchio & Morgan, P.C
175 Derby Street, Suite 30
Hingham, Massachusetts 02043
Tel:  (781) 749-7200
Fax:  (781) 740-4335
jmorgan@dtm-law.com